# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

HARRIS RICHARD LOVELL                                    CIVIL ACTION

VERSUS                                                          NO. 17-5836

DARREL VANNOY, WARDEN                               SECTION: "G"(3)

## REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2). Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

Petitioner, Harris Richard Lovell, is a state prisoner incarcerated at the Louisiana State Penitentiary in Angola, Louisiana. On July 28, 2011, he was convicted of aggravated rape under Louisiana law.[1] On August 24, 2011, he was sentenced to a term of life imprisonment without benefit of probation, parole, or suspension of sentence.[2] On February 15, 2013, the Louisiana First Circuit Court of Appeal affirmed his conviction and sentence.[3] His related writ application was denied by the Louisiana Supreme Court on October 4, 2013.[4]

---

[1] State Rec., Vol. 4 of 5, transcript of July 28, 2011, p. 115; State Rec., Vol. 1 of 5, minute entry dated July 28, 2011; State Rec., Vol. 1 of 5, jury verdict form.
[2] State Rec., Vol. 1 of 5, transcript of August 24, 2011; State Rec., Vol. 1 of 5, minute entry dated August 24, 2011.
[3] State v. Lovell, No. 2012 KA 1009, 2013 WL 595775 (La. App. 1st Cir. Feb. 15, 2013); State Rec., Vol. 1 of 5.
[4] State v. Lovell, 122 So. 3d 1014 (La. 2013); State Rec., Vol. 1 of 5.

On or about April 7, 2014, petitioner filed an application for post-conviction relief with the state district court.[5]  That application was denied on June 8, 2015.[6]  His related writ applications were then likewise denied by the Louisiana First Circuit Court of Appeal on October 5, 2015,[7] and the Louisiana Supreme Court on May 1, 2017.[8]

On June 13, 2017, petitioner filed the instant federal application seeking habeas corpus relief.[9]  The state filed a response conceding that the application is timely and that petitioner exhausted his remedies in the state courts; however, the state argues that petitioner's claims have no merit.[10]

## I.  Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal habeas corpus legislation, including 28 U.S.C. § 2254.  Amended subsections 2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure questions of law, and mixed questions of both.  The amendments "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law."  Bell v. Cone, 535 U.S. 685, 693 (2002).

As to pure questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application

---

[5] State Rec., Vol. 1 of 5.
[6] State Rec., Vol. 2 of 5, transcript of June 8, 2015; State Rec., Vol. 1 of 5, minute entry dated June 8, 2015.
[7] State v. Lovell, No. 2015 KW 1149 (La. App. 1st Cir. Oct. 5, 2015); State Rec., Vol. 2 of 5.
[8] State ex rel. Lovell v. State, 218 So. 3d 99 (La. 2017); State Rec., Vol. 2 of 5.
[9] Rec. Doc. 4.
[10] Rec. Doc. 12.

for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

As to pure questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Courts have held that the "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." Bell, 535 U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has explained:

> A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the [United States] Supreme Court's cases. A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the [United States] Supreme Court and nevertheless arrives at a result different from [United States] Supreme Court precedent.

Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir. 2010) (internal quotation marks, ellipses, brackets, and footnotes omitted).

Regarding the "unreasonable application" clause, the United States Supreme Court has held: "[A] state-court decision is an unreasonable application of our clearly established precedent if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case." White v. Woodall, 134 S. Ct. 1697, 1706 (2014). However, the Supreme Court cautioned:

Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error. Thus, if a habeas court must extend a rationale before it can apply to the facts at hand, then by definition the rationale was not clearly established at the time of the state-court decision. AEDPA's carefully constructed framework would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law.

Id. (citations and quotation marks omitted). Therefore, when the Supreme Court's "cases give no clear answer to the question presented, let alone one in [the petitioner's] favor, it cannot be said that the state court unreasonably applied clearly established Federal law." Wright v. Van Patten, 552 U.S. 120, 126 (2008) (quotation marks and brackets omitted). The Supreme Court has also expressly cautioned that "an unreasonable application is different from an incorrect one." Bell, 535 U.S. at 694. Accordingly, a state court's merely incorrect application of Supreme Court precedent simply does not warrant habeas relief. Puckett v. Epps, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable.").

While the AEDPA standards of review are strict and narrow, they are purposely so. As the United States Supreme Court has held:

[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable.

If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a guard against *extreme malfunctions* in the state criminal justice systems, *not a substitute for ordinary error correction through appeal. As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that*

4

*there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.*

Harrington v. Richter, 562 U.S. 86, 102-03 (2011) (citations omitted; emphasis added); see also

Renico v. Lett, 559 U.S. 766, 779 (2010) ("AEDPA prevents defendants – and federal courts –

from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of

state courts.").

The Supreme Court has expressly warned that although "some federal judges find [28

U.S.C. § 2254(d)] too confining," it is nevertheless clear that "all federal judges must obey" the

law and apply the strictly deferential standards of review mandated therein.   White v. Woodall,

134 S. Ct. 1697, 1701 (2014).

## II.  Facts

On direct appeal, the Louisiana First Circuit Court of Appeal summarized the facts of this

case as follows:

> Between May 1999 and May 2006, the defendant engaged in sexual acts with his young daughter, R.V., at their home in Houma.  Late in 2009, R.V. told Jeremy LeBouef, her brother-in-law, that the defendant had been sexually abusing her.  Jeremy told R.V.'s mother.  Then in March 2010, after W.L., R.V.'s half-sister, and also the defendant's biological daughter, disclosed the defendant had sexually abused her (W.L.), both girls were interviewed by Detective Rosalyn Morris, with the Terrebonne Parish Sheriff's Office.  Both girls were also interviewed at the Children's Advocacy Center (CAC) in Terrebonne Parish.  In her testimony at trial and in the CAC interview, which was played at trial, R.V. indicated that when she was five years old the defendant attempted to have anal sex with her on several occasions.  When she was eight years old, the defendant had vaginal sex with her.  Detective Morris testified at trial that W.L. told her of an instance where she (W.L.) and R.V. (and another sister) were with defendant at the home of their grandparents in Houma.  After play-wrestling with his daughters, the defendant and R.V. went into another room.  W.L. went to see what they were doing and saw the defendant having sex with R.V.  Detective Morris asked R.V. about that particular incident, but she could not recall it because the defendant had had sex with her on so many occasions that she could not "hone in on one specific" event. Anne Troy, a forensic nurse who interviewed R.V., testified at trial that R.V. indicated she was sexually abused by the defendant from when she was five years

old until she was about fifteen years old.  The abuse occurred in Houma and Jonesboro, Louisiana, and in Texas.

The defendant did not testify at trial.[11]

### III.  Petitioner's Claims

### A.  Denial of Challenge for Cause

Petitioner's first claim is that his rights were violated when the trial court denied the defense challenge for cause of prospective juror Genevieve Voisin.  On direct appeal, the Louisiana First Circuit Court of Appeal thoroughly analyzed that claim under state law and ultimately denied the claim, concluding:

> Despite the defendant's assertion that Voisin could not be fair and impartial, the trial court was in the best position to determine whether she could discharge her duty as a juror.  Upon reviewing the voir dire in its entirety, we cannot say the trial court abused its discretion in denying defense counsel's cause challenge.[12]

The Louisiana Supreme Court thereafter denied relief without assigning reasons.[13]

This claim warrants little consideration in this federal habeas corpus proceeding. Regardless of whether Voisin should have been excused for cause, which is an issue this Court need not and does not reach, petitioner's claim clearly fails for an entirely different reason.  After the challenge for cause was denied, defense counsel used one of her peremptory challenges to strike Voisin from the jury.[14]  Where, as here, a challenged juror is removed by use of a peremptory challenge after the denial of a challenge for cause, the petitioner is entitled to federal habeas corpus relief only if he demonstrates that the jury ultimately selected to try the case was not impartial. Ross v. Oklahoma, 487 U.S. 81, 85-86 (1988).  In Ross, the Supreme Court further expressly noted:

---

[11] State v. Lovell, No. 2012 KA 1009, 2013 WL 595775, at *1 (La. App. 1st Cir. Feb. 15, 2013); State Rec., Vol. 1 of 5.

[12] Id. at *4.

[13] State v. Lovell, 122 So. 3d 1014 (La. 2013); State Rec., Vol. 1 of 5.

[14] State Rec., Vol. 3 of 5, transcript of July 25, 2011, p. 118.

> [W]e reject the notion that the loss of a peremptory challenge constitutes a violation of the constitutional right to an impartial jury. We have long recognized that peremptory challenges are not of constitutional dimension. They are a means to achieve the end of an impartial jury. So long as the jury that sits is impartial, the fact that the defendant had to use a peremptory challenge to achieve that result does not mean the Sixth Amendment was violated.

Id. at 88 (citations omitted); accord Edwards v. Stephens, 612 Fed. App'x 719, 722 (5th Cir. 2015) ("[T]he forced use of a peremptory challenge does not rise to the level of a constitutional violation. Instead, a district court's erroneous refusal to grant a defendant's challenge for cause is only grounds for reversal if the defendant establishes that the jury which actually sat to decide his guilt or innocence was not impartial." (citation and quotation marks omitted)).

Because defense counsel used a peremptory challenge to strike Voisin and because petitioner has failed to demonstrate that the jury ultimately selected was not impartial,[15] his claim necessarily fails. Dorsey v. Quarterman, 494 F.3d 527, 533 (5th Cir. 2007); Lagrone v. Cockrell, No. 02-10976, 2003 WL 22327519, at *12 (5th Cir. Sept. 2, 2003); Arita v. Cain, Civ. Action No. 11-636, 2011 WL 4738666, at *29 (E.D. La. Aug. 25, 2011), adopted, 2011 WL 4738658 (E.D. La. Oct. 6, 2011), aff'd, 500 Fed. App'x 352 (5th Cir. 2012); Higgins v. Cain, Civ. Action No. 09-2632, 2010 WL 890998, at *27 (E.D. La. Mar. 8, 2010), aff'd, 434 Fed. App'x 405 (5th Cir. 2011); Stoves v. LeBlanc, Civ. Action No. 04-2037, 2010 WL 3523012, at *12 (E.D. La. Apr. 10, 2009), adopted, 2010 WL 3522957 (E.D. La. Sept. 1, 2010); Wilson v. Cain, Civ. Action No. 06-890, 2009 WL 2163124, at *12 (E.D. La. July 16, 2009), aff'd, 641 F.3d 96 (5th Cir. 2011).

That result is not changed by the fact that Louisiana state law provides relief when a defendant's challenge for cause is erroneously denied and the defendant exhausts all of his

---

[15] Later in his application, petitioner argues that prospective jurors Harvey Chauvin, Georgiana Cotton, and Donna Luke also should have been excused for cause. Out of an abundance of caution, the Court notes that those prospective jurors were also removed through the use of peremptory challenges by either the defense or the prosecution. State Rec., Vol. 3 of 5, transcript of July 25, 2011, pp. 116 and 121.

peremptory challenges.[16]  Because that is a protection afforded only by *state* law, a violation of that protection is not cognizable in this federal proceeding.  Hebert v. Vannoy, Civ. Action No. 17-2784, 2017 WL 6989108, at *7 (E.D. La. Dec. 20, 2017), adopted, 2018 WL 466167 (E.D. La. Jan. 16, 2018).  Federal habeas corpus relief may be granted only to remedy violations of the Constitution and laws of the United States; mere violations of state law will not suffice.  28 U.S.C. § 2254; Engle v. Isaac, 456 U.S. 107, 119 (1983).

## B.  Hearsay

Petitioner's second claim is that his rights were violated by the introduction of inadmissible hearsay evidence.  On direct appeal, the Louisiana First Circuit Court of Appeal denied that claim, holding:

> [T]he defendant argues the trial court erred in allowing inadmissible hearsay into evidence.  Specifically, the defendant contends that certain statements made at trial by Karen Bonvillain and/or Dustin Luke were not exceptions to the hearsay rule under La. Code Evid. art. 804(B)(5).  Karen testified that in 2010, she had rented out a room in her home to the defendant and his daughter, W.L.  In the early hours of March 28, 2010, Karen found W.L. sitting at the table, visibly upset and texting a message on her phone.  Karen asked her what was wrong, and W.L. told her that her father had touched her.  Defense counsel objected to hearsay at this point, but the prosecutor pointed out that W.L.'s statement to Karen was an initial complaint.  The trial court overruled the objection.  Karen took W.L. into her bedroom and woke up her (Karen's) boyfriend, Ted Dehart.  W.L. told Karen and Ted that when she awoke from sleeping, her panties were pulled down and the defendant was touching her on her vagina.  Later, Dustin Luke, W.L.'s boyfriend, testified that on that same night he had received a text message from W.L. that she woke up with her father on top of her.  Defense counsel again objected to hearsay, but the prosecutor argued W.L.'s text to Dustin was an initial complaint.  Defense counsel pointed out that it was the testimony of Karen that fell under the initial complaint exception.  However, the prosecutor suggested that it was "a simultaneous first complaint" since W.L. texted Dustin at the same time she told Karen about the defendant.  The objection was overruled.  Ted also testified.  His testimony

---

[16] See State v. Taylor, 875 So. 2d 58, 62 (La. 2004) ("In order for a defendant to prove reversible error warranting reversal of both his conviction and sentence, he need only show the following: (1) erroneous denial of a challenge for cause; and (2) use of all his peremptory challenges.  Prejudice is presumed when a defendant's challenge for cause is erroneously denied and the defendant exhausts all his peremptory challenges.  An erroneous ruling depriving an accused of a peremptory challenge violates his substantial rights and constitutes reversible error." (citations and footnote omitted)).

regarding what W.L. told him and Karen was very similar to Karen's testimony. Defense counsel did not lodge a hearsay objection to Ted's testimony about what W.L. told him.

The defendant argues in his brief that the hearsay exception under La. Code Evid. art. 804(B)(5) is inapplicable in this case. Article 804(B)(5) provides that a statement made by a person under the age of twelve years that is one of initial or otherwise trustworthy complaint of sexually assaultive behavior is not excluded by the hearsay rule. The defendant argues that since W.L. was not under twelve when she made the complaint of sexual assault, her statements to Karen and Dustin constituted inadmissible hearsay.

The defendant is correct as to the inapplicability of Article 804(B)(5). No one at trial suggested that this was the controlling article. The relevant article, however, is La. Code Evid. art. 801(D)(1)(d), which provides that a statement is not hearsay if the declarant testifies at trial and is subject to cross-examination concerning the statement, and the statement is consistent with the declarant's testimony and is one of initial complaint of sexually assaultive behavior. See State v. Ferguson, 540 So.2d 1116, 1119 (La. App. 1st Cir.1989).

W.L. testified at trial about the incident with the defendant, and she was cross-examined. W.L.'s testimony was consistent with Karen's testimony. Accordingly, defense counsel's objection to Karen's testimony about what W.L. told her about the defendant was properly overruled by the trial court as non-hearsay under art. 801(D)(1)(d). Moreover, the initial complaint under art. 801(D)(1)(d) has been interpreted as the first opportunity of the victim to discuss the sexual assault with a "friendly adult." See State v. Ste. Marie, 97-0168 (La. App. 3rd Cir. 4/18/01), 801 So.2d 424, 432-33; State v. Free, 26,267 (La. App. 2nd Cir. 9/21/94), 643 So.2d 767, 776, writ denied, 94-2846 (La. 3/10/95), 650 So.2d 1175. Dustin testified at trial that he was fifteen or sixteen years old in 2010 when he received the text from W.L. The exact content of the text message was never adduced at trial. Thus, arguably, since the minor Dustin could not be classified as an adult, and W.L.'s statement made to Karen was the first reasonable opportunity presented to W.L. to reveal the abuse, W.L.'s statement to Karen comprised the original complaint and was properly admitted. See State v. Anderson, 526 So.2d 499, 502 (La. App. 1st Cir. 1988), writ denied, 537 So.2d 1160 (La. 1989). We note, as well, that since W.L.'s outcry was made to Karen and Dustin at virtually the same time, albeit through different modes of communication, both statements, arguably, together constituted the initial complaint under Article 801(D)(1)(d). See State v. Guidry, 94-897 (La. App. 3rd Cir. 3/1/95), 651 So.2d 458, 460-61.

Finally, even assuming, *arguendo*, that Karen's or Dustin's testimony regarding what W.L. told them about the defendant constituted hearsay, given the trial testimony of Detective Morris, Jeremy LeBouef, Anne Troy, R.V., W.L., R.V's and W.L.'s mother, and the CAC interviews of R.V. and W.L. admitted into evidence and played for the jury, such testimony of Karen or Dustin was cumulative and corroborative of other testimony establishing the defendant's guilt. Inadmissible hearsay which is merely cumulative or corroborative of other testimony adduced at trial is considered harmless. State v. Spell, 399 So.2d 551, 556 (La. 1981). Therefore, even if erroneous, its admission into evidence would

have been harmless beyond a reasonable doubt.  See La. Code Crim. P. art. 921; Sullivan v. Louisiana, 508 U.S. 275, 279, 113 S.Ct. 2078, 2081, 124 L.Ed.2d 182 (1993); State v. Hilton, 99-1239 (La. App. 1st Cir. 3/31/00), 764 So.2d 1027, 1035, writ denied, 2000-0958 (La. 3/9/01), 786 So.2d 113; State v. Byrd, 540 So.2d 1110, 1114 (La. App. 1st Cir.), writ denied, 546 So.2d 169 (La. 1989).  See also State v. Taylor, 2001-1638 (La. 1/14/03), 838 So.2d 729, 748, cert. denied, 540 U.S. 1103, 124 S.Ct. 1036, 157 L.Ed.2d 886 (2004); State v. Johnson, 389 So.2d 1302, 1305-06 (La. 1980).

       This assignment of error is without merit.[17]

Without assigning reasons, the Louisiana Supreme Court then likewise denied relief.[18]

The United States Fifth Circuit Court of Appeals has held:  "In habeas actions, [a federal court] does not sit to review the mere admissibility of evidence under state law."  Little v. Johnson, 162 F.3d 855, 862 (5th Cir. 1998).  Therefore, to the extent that petitioner is arguing that the state courts misapplied state evidence law in denying his hearsay claim, the claim simply is not reviewable in this federal proceeding.  Pettus v. Cain, Civ. Action No. 14-1685, 2015 WL 1897711, at *7 (E.D. La. Apr. 27, 2015).

To the extent that petitioner is asserting a federal claim, he fares no better.  The United States Fifth Circuit Court of Appeals has explained:

> We will not grant habeas relief for errors in a trial court's evidentiary rulings unless those errors result in a "denial of fundamental fairness" under the Due Process Clause.  The erroneous admission of prejudicial evidence will justify habeas relief only if the admission was a crucial, highly significant factor in the defendant's conviction.

Neal v. Cain, 141 F.3d 207, 214 (5th Cir. 1998) (citations omitted); see also Little, 162 F.3d at 862 ("[O]nly when the wrongfully admitted evidence has played a crucial, critical, and highly significant role in the trial will habeas relief be warranted.").

---

[17] State v. Lovell, No. 2012 KA 1009, 2013 WL 595775, at *4-5 (La. App. 1st Cir. Feb. 15, 2013); State Rec., Vol. 1 of 5.

[18] State v. Lovell, 122 So. 3d 1014 (La. 2013); State Rec., Vol. 1 of 5.

Here, there is simply no basis for the Court to conclude that the challenged testimony, whether hearsay or not, was a "crucial, highly significant factor" in petitioner's conviction. The testimony was cumulative, in that W.L. herself also testified as to her communications with Karen Bonvillain and Dustin Luke. Moreover, petitioner was not on trial for the rape of W.L.; he was on trial for the rape of R.V. His conviction of that crime obviously resulted from the state's overwhelming evidence of his guilt, including the victim's compelling testimony concerning her repeated sexual abuse from the age of five, *not* from this cumulative testimony concerning W.L.

For all of these reasons, this claim should be denied.

### C.  Insufficient Evidence

Petitioner's third claim is that there was insufficient evidence to support his conviction. The crux of this claim is that "the State's case is based largely upon the testimony of the victim"[19]; however, petitioner argues that the jurors should not have believed the victim's testimony because she lacked credibility and other witnesses testified as to her general untruthfulness. This claim was first asserted in the state post-conviction proceedings, and it was rejected on the merits in an oral ruling by the state district judge. In denying the claim, the judge agreed that witness credibility was the crucial issue in the case, stating:

> This case boiled down to a question of credibility. Did the jury believe what the victim was saying or did the jury believe the other testimony that was offered? Did the jury believe what defense counsel as [sic] arguing in this matter to create reasonable doubt, or did the jury believe the State's presentation and argument concerning the evidence in this particular matter.[20]

The judge continued:

> These are very very difficult cases because when a case goes to the jury based on credibility, these are tough decisions. And they are the ones that whatever has transpired, the jury is deemed to be the fact finders in this case. And their decision is given great weight. And without some glaring error, you know, the jury

---

[19] Rec. Doc. 4, p. 24.
[20] State Rec., Vol. 2 of 5, transcript of June 8, 2015, p. 35.

is instructed that they will make the decision, they are fact finders. They have the right to believe part of what they've heard, not part of what they've heard, give the testimony the weight that it serves. They're instructed to not put into effect or allow a motion or the objections of lawyers, these sort of things to interfere with their judgment, and to make a decision based on the law and the evidence. And there is no indication that anything but that happened.[21]

The Louisiana First Circuit Court of Appeal denied petitioner's related writ application without assigning reasons,[22] and the Louisiana Supreme Court then likewise denied relief, stating that petitioner failed to meet his burden of proof.[23]

Because a sufficiency of the evidence claim presents a mixed question of law and fact, this Court must defer to the state court's decision rejecting this claim unless petitioner shows that the decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); Taylor v. Day, Civ. Action No. 98-3190, 1999 WL 195515, at *3 (E.D. La. Apr. 6, 1999), aff'd, 213 F.3d 639 (5th Cir. 2000). For the following reasons, the Court finds that he has made no such showing.

Claims challenging the sufficiency of the evidence are to be analyzed pursuant to the standard set forth in Jackson v. Virginia, 443 U.S. 307 (1979). In Jackson, the United States Supreme Court held that, in assessing such a claim, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319. Accordingly, "[t]he Jackson inquiry 'does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit.'" Santellan v. Cockrell, 271 F.3d 190, 193 (5th Cir. 2001) (quoting Herrera v. Collins, 506 U.S. 390, 402 (1993)) (emphasis added); see also Cavazos v. Smith, 565 U.S. 1, 2 (2011) ("[A] federal court

---

[21] Id. at p. 37.

[22] State v. Lovell, No. 2015 KW 1149 (La. App. 1st Cir. Oct. 5, 2015); State Rec., Vol. 2 of 5.

[23] State *ex rel.* Lovell v. State, 218 So. 3d 99 (La. 2017); State Rec., Vol. 2 of 5.

may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. ...  Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold.").

Moreover, because the state court's decision applying the already deferential Jackson standard must be assessed here under the strict and narrow standard of review mandated by the AEDPA, the standard to be applied by this Court is in fact "twice-deferential."  Parker v. Matthews, 567 U.S. 37, 43 (2012); see also Coleman v. Johnson, 566 U.S. 650, 651 (2012).  Applying that stringent standard, the Court finds that petitioner is not entitled to relief for the following reasons.

In the instant case, petitioner was charged with and convicted of aggravated rape pursuant to La. Rev. Stat. Ann. § 14:42(A)(4).  Specifically, he was charged with sexual intercourse with R.V., an act which was deemed to be without the lawful consent of the victim because she was under age of twelve.[24]

To prove that charge, the state called the victim, R.V., to testify at trial.  She testified that petitioner removed her panties and rubbed her "private area" when she was "around 5."[25]  She continued:

> Q.    The next independent memory that you have of something happening, can you tell us about that?
>
> A.    I remember laying down, like us laying down; and he took off my pants, and my clothes and stuff; and he actually stuck it in.
>
> Q.    Okay, and where did he stick it in, in you?  When you say in, what do you mean?

---

[24] The current version of the statute now refers to this crime as "first degree rape" and the applicable age of the victim has been raised from twelve to thirteen.  However, petitioner was charged under a prior version of the law and the illegal acts were alleged to have occurred when the victim was under the age of twelve.  See State Rec., Vol. 1 of 5, indictment; see also State Rec., Vol. 1 of 5, transcript of July 26, 2011, pp. 211-13.
[25] State Rec., Vol. 4 of 5, transcript of July 27, 2011, pp. 168-69.

A.    My private, the front part.

Q.    All right, your private front part.  All right, do you remember how old you were?

A.    Honestly, no, I don't.

Q.    Were you under the age of 8?

A.    Yes.

Q.    So, you were a little girl?

A.    Yes.

Q.    Did he put anything on his penis?

A.    No.

Q.    Okay, did he – you say he tried to put it in your vagina?

A.    Yes, sir.

Q.    Could he penetrate?

A.    What does that mean?

Q.    Was he able to get it all the way in?

A.    It took him a while, but yes.[26]

She further testified:

Q.    Okay, and in the tape [of the CAC interview which was played at trial], it looks like you told Ms. Dawn that there had been occasions when you were younger, that he tried to put it in your butt?

A.    Yes, sir.

Q.    All right, and would that have been before this incident, where he put it in –

A.    Yes, sir.

Q.    So, you were 8 when he put it in your vagina –

---

[26] Id. at p. 170.

14

A.     Somewheres around 8.

Q.     But you were younger than 8, when he tried to put it in your butt?

A.     Yes, sir.

Q.     … Did you feel the presence of his penis on your rectum?

A.     It was right there.

Q.     Did you feel his dick up against your butt?

A.     Yes.

Q.     Did you feel pressure like he was trying to enter?

A.     Yes.

Q.     Okay, now, as time progressed, after the first time that he had sex with you, which is when you were 8, or thereabouts?

A.     Uh-huh.

Q.     Did the acts of sexual intercourse continue?

A.     Yes.[27]

She further testified regarding other acts of oral and vaginal sexual intercourse with petitioner.[28]

In light of the foregoing, it is obvious that the elements of the crime and petitioner's guilt were established through the victim's testimony, and it is clear that *a rape victim's testimony alone is generally sufficient evidence to support a conviction.* Peters v. Whitley, 942 F.2d 937, 941-42 (5th Cir. 1991); see also Fetterley v. Whitley, No. 9430310, 1994 WL 708655, at *1 n.6 (5th Cir. Dec. 6, 1994); Johnson v. Cain, Civ. Action No. 16-927, 2017 WL 5176386, at *15 (E.D. La. Apr. 25, 2017), adopted, 2017 WL 5157604 (E.D. La. Nov. 7, 2017); Craddock v. Cain, Civ. Action

---

[27] Id. at pp. 171-72.
[28] See, e.g., id. at pp. 172 and 175.

No. 10-2044, 2014 WL 2083115, at *11 (E.D. La. May 19, 2014); Stogner v. Cain, Civ. Action No. 12-2703, 2013 WL 2444667, at *11 (E.D. La. June 4, 2013).

Although petitioner claims that the victim lied, the jury obviously found her testimony credible. Where, as here, a petitioner's insufficient evidence claim is based on arguments concerning witness credibility, a federal habeas court generally will not grant relief. See Schlup v. Delo, 513 U.S. 298, 330 (1995) ("[U]nder Jackson, the assessment of the credibility of witnesses is generally beyond the scope of review."); Ramirez v. Dretke, 398 F.3d 691, 695 (5th Cir. 2005) ("All credibility choices and conflicting inferences are to be resolved in favor of the verdict."); McCowin v. Scott, No. 93-5340, 1994 WL 242581, at *2 (5th Cir. May 26, 1994); Phillips v. Cain, Civ. Action No. 11-2725, 2012 WL 2564926, at *14 (E.D. La. Apr. 11, 2012), adopted, 2012 WL 2565025 (E.D. La. July 2, 2012); Picou v. Cain, Civ. Action No. 06-6258, 2007 WL 1521021, at *5 (E.D. La. May 22, 2007). There is no basis for varying from that general rule in the instant case.

In summary, when the evidence in this case is viewed *in the light most favorable to the prosecution*, it simply cannot be said that the guilty verdict was *irrational*. Therefore, petitioner cannot show that the state court's decision rejecting his claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Accordingly, under the doubly deferential standards of review which must be applied by this federal habeas court, relief is not warranted.

## D.  Inadmissible Evidence

Petitioner next argues that his rights were violated when a state's witness was allowed to reference "letters, text messages and pictures" not produced at trial. In his federal application, plaintiff fails to identify the testimony in question. However, the Court notes when petitioner

asserted this claim in his state post-conviction application, he was more specific and cited two examples from the testimony of Anne Troy, the state's expert witness from Children's Hospital. Troy testified that she was told that W.L. received letters from petitioner stating that he was sorry and seeking forgiveness; however, W.L. lost those letters.[29]  Troy further testified that R.V. reported that petitioner sent her a photograph of his penis which she deleted.[30]  However, because no objections were lodged to that testimony at trial, the state courts apparently have never ruled on whether the testimony was in fact admissible under Louisiana law.

Nevertheless, as previously noted in the discussion of petitioner's hearsay claim, a federal habeas court "does not sit to review the mere admissibility of evidence under state law." Little v. Johnson, 162 F.3d 855, 862 (5th Cir. 1998).  Therefore, to the extent that petitioner is arguing that the trial court erred in allowing the testimony, that claim simply is not cognizable in this federal proceeding.  See, e.g., Pettus v. Cain, Civ. Action No. 14-1685, 2015 WL 1897711, at *7 (E.D. La. Apr. 27, 2015).

Rather, as previously noted, this Court looks only to the issue of whether the testimony rendered the trial fundamentally unfair.  See Neal v. Cain, 141 F.3d 207, 214 (5th Cir. 1998) ("We will not grant habeas relief for errors in a trial court's evidentiary rulings unless those errors result in a 'denial of fundamental fairness' under the Due Process Clause.  The erroneous admission of prejudicial evidence will justify habeas relief only if the admission was a crucial, highly significant factor in the defendant's conviction." (citations omitted)); see also Little, 162 F.3d at 862 ("[O]nly when the wrongfully admitted evidence has played a crucial, critical, and highly significant role in the trial will habeas relief be warranted.").  These fleeting second-hand testimonial references to evidence which purportedly existed but had been lost or deleted was hardly crucial or critical

---

[29] State Rec., Vol. 4 of 5, transcript of July 27, 2011, p. 25.
[30] Id. at p. 43.

and cannot be said to have played a significant part in petitioner's conviction. As noted, petitioner was not on trial regarding the alleged sexual abuse of W.L.; he was on trial only for the rape of R.V. Further, his conviction of that crime obviously resulted from the state's overwhelming evidence of his guilt, including the victim's compelling testimony concerning her repeated sexual abuse from the age of five, not from these fleeting testimonial references made by Troy.

For these reasons, this claim should be denied.

## E.  False Testimony

Petitioner's fifth claim is that his rights were violated when the prosecution knowingly used false testimony to secure the conviction. Specifically, he argues that the prosecutor was aware that R.V.'s testimony accusing petitioner of rape was false because the victim's mother told the prosecutor that petitioner had no access to the victim at some points during which the sexual abuse allegedly occurred. The claim is premised on the following exchange that occurred during the third day of trial:

> BY MR. RHODES [prosecutor]:
>     I need to put something on the record ....
>
> BY THE COURT:
>     All right, let the record reflect the defendant is present with counsel; and the jury is not in the courtroom.
>
> BY MR. RHODES:
>     All right, Judge, in light of a recent U.S. Supreme court decision, Louisiana Supreme Court decision, and also training that I have received, I understand that Brady material has become a very hot topic, as it should; and there is some gray area as to what is, and is not Brady. So, just to be on the safe side, I don't believe this to be Brady, but I believe that if you even have to raise the question in your head, then you should share it with the defense.
>     This morning, as I am walking to come to Court, literally leaving the office, the victim's mother, [E.V.] – the victim, [R.V.], principal victim on the Bill – her mother is brought into my office and she is in – I think I can accurately describe it – hysterics. But she looks sleep-deprived. She is very disheveled, read [sic] eyed, and crying; and she needs to tell me something.

And she begins to tell me – she says, I know that [R.V.] says that the penetration – she may have used the word, 'the sex' but she meant – it was obvious she meant the sexual penetration started when she was 8, but it had to be when she was 5, because when she was 5 is when she went to live with her dad in Texas and all of that.  I said, 'well, ma'am, do you definitively know when [R.V.] was penetrated?  'No, I don't, but I don't think it could have been when she was 8, based on the logistics of where she lived.'  I said, 'well are you saying that she wasn't around her dad during that period from 5 to 8, like you know, y'all lived in another country or something?'  'No, but she couldn't have been in Texas' and she was really rambling at that point in time.

Like I said, I don't know if that is <u>Brady</u> material or not, because it didn't come from the victim.  Quite frankly, it didn't make a lot of sense to me – the Victim's Assistance Coordinator was with her, and she pretty [sic] befuddled by it.  The woman just looked like she was afraid that if she didn't say that, she would (*quote*) "get in trouble", is I think her words.  Because she has been taking the sequestration order very seriously – some people go into hyper-silence.  And I don't know what that was all about.

I wanted Amanda [Mustin, defense counsel,] to be aware, that if she wanted to question [E.V., R.V.'s mother,] on the issue of whatever it was that she was trying to express to me – I wanted to have the record clear that I disclosed it.  I don't know what else I can do.  Fair enough?

BY MS. MUSTIN:
Fair enough.[31]

Mustin did in fact later call R.V.'s mother as a defense witness at trial; however, no testimony was elicited from her concerning this subject.[32]  At the evidentiary hearing held on petitioner's post-conviction application, Mustin testified but she was asked no questions whatsoever concerning why she opted not to pursue this subject during her questioning of the mother at trial.

A claim of prosecutorial misconduct, including the use of false testimony, presents a mixed question of law and fact.  <u>Harvey v. Cain</u>, Civ. Action No. 13-2994, 2013 WL 6490484, at *5 (E.D. La. Dec. 10, 2013).  Therefore, to obtain federal relief, petitioner must show that the state court's decision denying this claim "was contrary to, or involved an unreasonable application of,

---

[31] State Rec., Vol. 4 of 5, transcript of July 27, 2011, pp. 80-81.
[32] State Rec., Vol. 4 of 5, transcript of July 28, 2011, pp. 33-38.

clearly established Federal law, as determined by the Supreme Court of the United States."  28

U.S.C. § 2254(d)(1).  For the following reasons, it is clear that he has not made that showing.

In denying post-conviction relief, the state district judge did not expressly give his reasons

for denying this claim, and the Louisiana First Circuit Court of Appeal likewise denied petitioner's

related writ application without assigning reasons.[33]  The Louisiana Supreme Court then also

denied relief, stating only that petitioner failed to meet his burden of proof with respect to his

claim.[34]  However, that dearth of express reasoning is of no moment in this federal habeas corpus

proceeding.  As the United States Supreme Court has explained:

> By its terms § 2254(d) bars relitigation of any claim "adjudicated on the
> merits" in state court, subject only to the exceptions in §§ 2254(d)(1) and (2).  There
> is no text in the statute requiring a statement of reasons.  The statute refers only to
> a "decision," which resulted from an "adjudication."  As every Court of Appeals to
> consider the issue has recognized, determining whether a state court's decision
> resulted from an unreasonable legal or factual conclusion does not require that there
> be an opinion from the state court explaining the state court's reasoning.  And as
> this Court has observed, a state court need not cite or even be aware of our cases
> under § 2254(d).  *Where a state court's decision is unaccompanied by an
> explanation, the habeas petitioner's burden still must be met by showing there was
> no reasonable basis for the state court to deny relief.*  This is so whether or not the
> state court reveals which of the elements in a multipart claim it found insufficient,
> for § 2254(d) applies when a "claim," not a component of one, has been
> adjudicated.

Harrington v. Richter, 562 U.S. 86, 98 (2011) (citations omitted; emphasis added).  The Supreme

Court held:

> Under § 2254(d), a habeas court must determine what arguments or theories
> supported or, as here, *could have supported*, the state court's decision; and then it
> must ask whether it is possible fairminded jurists could disagree that those
> arguments or theories are inconsistent with the holding in a prior decision of this
> Court.

---

[33] State v. Lovell, No. 2015 KW 1149 (La. App. 1st Cir. Oct. 5, 2015); State Rec., Vol. 2 of 5.
[34] State *ex rel.* Lovell v. State, 218 So. 3d 99 (La. 2017); State Rec., Vol. 2 of 5.

Id. at 102 (emphasis added); accord Evans v. Davis, 875 F.3d 210, 216 (5th Cir. 2017) ("We are therefore tasked with considering not only the arguments and theories the state habeas court actually relied upon to reach its ultimate decision but also all the arguments and theories it could have relied upon.").

The applicable law is clear:  Due process may be violated if a prosecutor knowingly uses false testimony at trial or allows untrue testimony to go uncorrected.  Giglio v. United States, 405 U.S. 150, 153 (1972); Napue v. Illinois, 360 U.S. 264, 269 (1959); Faulder v. Johnson, 81 F.3d 515, 519 (5th Cir. 1996).  However, a petitioner is entitled to relief on such a claim only if he shows that (1) the testimony in question was actually false, (2) the prosecutor knew it was false, and (3) the testimony was material.  Duncan v. Cockrell, 70 Fed. App'x 741, 744 (5th Cir. 2003).

Based on the record, this Court cannot say that R.V.'s testimony was in fact false, much less that the prosecutor knew that it was false.  On the contrary, it was the prosecutor who called the mother's statement to the attention of the trial court and defense counsel.  Although he noted that he did not understand precisely what information the mother was attempting to convey, he clearly was making every attempt to be transparent and to err on the side of caution.  There is simply no basis for contending that he knowingly presented false testimony at trial or allowed such testimony to go uncorrected.[35]

For all of these reasons, petitioner cannot show that the state court's decision denying this claim "was contrary to, or involved an unreasonable application of, clearly established Federal

---

[35] Moreover, even if the mother had testified at trial that petitioner had no access to the victim at some points during the periods when the sexual abuse allegedly occurred, that would not suffice to establish that this claim was meritorious.  In that scenario, the mother's testimony would simply have *conflicted* with the victim's testimony; however, the mere fact that the testimony of two witnesses is contradictory is insufficient to establish a claim that the prosecutor has knowingly and intentionally presented false testimony.  See, e.g., Koch v. Puckett, 907 F.2d 524, 531 (5th Cir. 1990) ("[C]ontradictory trial testimony… merely establishes a credibility question for the jury.")

law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

Therefore, relief is not warranted.

### F.  Ineffective Assistance of Counsel

In connection with the two preceding claims concerning the introduction of inadmissible evidence and the presentation of false testimony, petitioner additionally argues that he received ineffective assistance of counsel concerning those purported trial violations.  Those claims were asserted in petitioner's post-conviction application and denied after an evidentiary hearing.  In denying relief, the state district court judge stated:

> [B]ased on the assignments of error that were raised in this matter, the Court is of the opinion that the defendant has not proved that he is entitled to relief in this matter, and he has not raised the level of defense counsel under Strickland Versus Washington such that he has shown prejudice that would have altered the decision in this case.[36]

The Louisiana First Circuit Court of Appeal denied petitioner's related writ application without assigning reasons,[37] and the Louisiana Supreme Court then likewise denied relief, stating: "Relator fails to show he received ineffective assistance of counsel under the standard of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)."[38]

As the state courts correctly noted, the clearly established federal law concerning ineffective assistance of counsel claims is founded on the United States Supreme Court's decision in Strickland.  In that case, the Supreme Court established a two-prong test for evaluating ineffective assistance of counsel claims.  Specifically, a petitioner seeking relief on such a claim is required to show both that counsel's performance was deficient *and* that the deficient performance prejudiced his defense.  Strickland, 466 U.S. at 697.  The petitioner bears the burden

---

[36] State Rec., Vol. 2 of 5, transcript of June 8, 2015, pp. 37-38.
[37] State v. Lovell, No. 2015 KW 1149 (La. App. 1st Cir. Oct. 5, 2015); State Rec., Vol. 2 of 5.
[38] State *ex rel.* Lovell v. State, 218 So. 3d 99 (La. 2017); State Rec., Vol. 2 of 5.

of proof and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." Jernigan v. Collins, 980 F.2d 292, 296 (5th Cir. 1993); see also Clark v. Johnson, 227 F.3d 273, 284 (5th Cir. 2000). If a court finds that the petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong. Strickland, 466 U.S. at 697.

To prevail on the deficiency prong of the Strickland test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. See Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998). Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. See Strickland, 466 U.S. at 689. "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting Strickland, 466 U.S. at 690). The petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Mattheson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

The appropriate standard for determining prejudice varies slightly depending on whether a petitioner is challenging the actions of trial or appellate counsel. In order to prove prejudice with respect to trial counsel, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id. In making a determination as to whether prejudice

occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." Crockett, 796 F.2d at 793. On the other hand, to prove prejudice with respect to a claim that appellate counsel was ineffective, a petitioner must show a reasonable probability that he would have prevailed on appeal but for his counsel's deficient representation. Briseno v. Cockrell, 274 F.3d 204, 207 (5th Cir. 2001); see also Smith v. Robbins, 528 U.S. 259, 286 (2000). Therefore, a petitioner must demonstrate a reasonable probability that, if appellate counsel's performance had not been deficient in the manner claimed, the appellate court would have vacated or reversed the trial court judgment based on the alleged error. Briseno, 274 F.3d at 210.

Because an ineffective assistance of counsel claim presents a mixed question of law and fact, this Court must defer to the state court decision rejecting petitioner's claims on the merits unless that decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); Moore v. Cockrell, 313 F.3d 880, 881 (5th Cir. 2002). Further, the United States Supreme Court has explained that, under the AEDPA, federal habeas corpus review of an ineffective assistance of counsel claim is in fact *doubly* deferential:

> The pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a Strickland claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law. A state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself.
>
> A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision. Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004). And as this Court has explained, "[E]valuating whether a

> rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." <u>Ibid</u>. "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." <u>Knowles v. Mirzayance</u>, 556 U.S. ____, ____, 129 S.Ct. 1411, 1413-14, 173 L.Ed.2d 251 (2009) (internal quotation marks omitted).

<u>Harrington v. Richter</u>, 562 U.S. 86, 101 (2011) (citation omitted). The Supreme Court then explained:

> Surmounting <u>Strickland</u>'s high bar is never an easy task. An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the <u>Strickland</u> standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence. The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom.
>
> Establishing that a state court's application of <u>Strickland</u> was unreasonable under § 2254(d) is all the more difficult. *The standards created by <u>Strickland</u> and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.* The <u>Strickland</u> standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under <u>Strickland</u> with unreasonableness under § 2254(d). *When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard.*

<u>Id</u>. at 105 (citations omitted; emphasis added). Therefore, on a habeas review of an ineffective assistance claim, "federal courts are to afford *both* the state court *and* the defense attorney the benefit of the doubt." <u>Woods v. Etherton</u>, 136 S. Ct. 1149, 1151 (2016) (quotation marks omitted; emphasis added). For the following reasons, the Court finds that, under those stringently deferential standards, it simply cannot be said that relief is warranted with respect to petitioner's ineffective assistance of counsel claims.

Petitioner argues that trial counsel was ineffective for failing to object to (1) the testimony referencing the "letters, text messages and pictures" not produced at trial and (2) the state's failure to correct the allegedly false testimony of the victim based on her mother's aforementioned statement to the prosecutor. However, it has been noted:

> Generally speaking, a failure to object, standing alone, does not rise to the level of constitutionally deficient performance. In cases where an accused complains that counsel was ineffective because he did not object to something ..., the courts grant significant deference, as such actions fall squarely within the ambit of trial strategy.

Rios-Delgado v. United States, 117 F. Supp. 2d 581, 589 (W.D. Tex. 2000) (quotation marks omitted); accord Burnett v. Collins, 982 F.2d 922, 930 (5th Cir. 1993); Forman v. Cain, Civ. Action No. 07-4200, 2008 WL 1746710, at *7 (E.D. La. Apr. 14, 2008). Even where an objection might have some chance of succeeding, an attorney is allowed to make a strategic choice to forego such an objection to avoid antagonizing the jury. See Wiley v. Puckett, 969 F.2d 86, 102 (5th Cir. 1992); Spicer v. Cain, Civ. Action No. 07-3770, 2007 WL 4532221, at *10 (E.D. La. Dec. 19, 2007).

Moreover, the United States Supreme Court has clearly held:

> *Judicial scrutiny of counsel's performance must be highly deferential.* It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, *a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.*

Strickland, 466 U.S. at 689 (citation and quotation marks omitted; emphasis added).

As noted, petitioner first argues that defense counsel should have objected to Troy's testimony concerning the remorseful letter petitioner sent to W.L. and the lewd photograph he sent to R.V. However, counsel obviously could have felt that any such objections would have done more harm than good. In the first place, the testimony was of little consequence, consisting of nothing more than fleeting comments relaying second-hand information concerning supposedly lost or deleted evidence. Second, in any event, by the time counsel could have objected, the statements had already been made in the jury's presence. Therefore, an objection would have resulted in nothing more than a curative instruction for jurors to ignore what they had already heard, a remedy of questionable value given human nature. Even worse, an objection might have served to focus the jurors' attentions more intently on the testimony. Balancing the slight possible reward against that potential risk, the Court finds that counsel cannot be said to have performed deficiently in opting to forgo such an objection.

Further, *even if* counsel could be said to have performed deficiently in this respect, petitioner clearly cannot show that he was prejudiced by the lack of an objection. As noted, in order to prove prejudice with respect to trial counsel, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 694. In light of the overwhelming evidence of petitioner's guilt, there is no reasonable probability that the result in this case would have been different if only counsel had objected to these fleeting comments.

As to defense counsel remaining silent on the state's failure to correct the victim's allegedly false testimony, that claim is even more baseless. As already explained herein, it has not been established that the victim's testimony was in fact false. Moreover, although defense counsel decided not to ask the victim's mother about the statements she made in the conversation with the

prosecutor, no evidence has been offered as to *why* defense counsel made that decision. The fault for that lack of evidence rests squarely at petitioner's feet, in that he bears the burden of proof of an ineffective assistance claim. His failure to offer any evidence on this point is even more inexplicable in light of the fact that defense counsel actually testified at the post-conviction evidentiary hearing – and yet petitioner failed to ask her a single question concerning why she elected not question the mother concerning the statements she made in the conversation with the prosecutor. Because counsel's decision obviously could have been based on legitimate grounds, such as if she found the mother to lack credibility on that point or had reason to believe that she would recant her statements, petitioner must establish that counsel did not in fact have a legitimate reason for her decision. Without some evidence on that issue, he has utterly failed to meet his burden of proof to show that trial counsel was ineffective.

Petitioner also alleges that appellate counsel was ineffective. When considering such a claim, a court must be mindful that appellate counsel "is not obligated to urge on appeal every nonfrivolous issue that might be raised (not even those requested by defendant)." West v. Johnson, 92 F.3d 1385, 1396 (5th Cir. 1996). Rather, "[e]xperienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." Jones v. Barnes, 463 U.S. 745, 751-52 (1983). Far from evidencing ineffectiveness, an appellant counsel's restraint often benefits his client because "a brief that raises every colorable issue runs the risk of burying good arguments ... in a verbal mound made up of strong and weak contentions." Id. at 753. As a result, the applicable test to be applied in assessing such a claim is whether the issue ignored by appellate counsel was "clearly stronger" than the issues actually presented on appeal. See, e.g., Diaz v. Quarterman, 228 Fed. App'x 417, 427 (5th Cir. 2007); accord Robbins, 528 U.S. at 288.

On direct appeal in this case, appellate counsel asserted two claims:  (1) the trial court erred in denying the defense challenge for cause of prospective juror Genevieve Voisin; and (2) the trial court erred in overruling the defense objection to hearsay testimony.[39]  Although those claims were ultimately found to be without merit, the claims petitioner proposes were certainly no stronger and petitioner cannot show he was prejudiced by their omission for the following reasons.

Specifically, petitioner notes that the trial court denied the defense challenges for cause of *four* prospective jurors (Genevieve Voisin, Harvey Chauvin, Georgiana Cotton, and Donna Luke),[40] but appellate counsel limited her assignment of error to only the denial of the challenge of Voisin.  He argues that counsel was ineffective for failing to include all four prospective jurors in her assignment of error.

However, the Louisiana First Circuit Court of Appeal denied the claim as to Voisin, who was a more problematic juror for the defense.  In denying the claim, the Court of Appeal noted:

> [W]hen defense counsel began questioning the prospective jurors, the following exchange with Voisin took place:
>
> > By defense counsel:  So, while you are all sitting here, you have already seen Richard.  You have already heard what Richard is charged with.  So, it is normal to have some sort of feeling at this stage.  Obviously, we don't want you to have a feeling of guilt or innocence.  But it is normal to have some feelings.  So, what are you[r] initial feelings about Richard, or about this case right now?  Does anybody have something strong that they are feeling?  Ms. Voisin?
> >
> > By Ms. Voisin:  I have two (2) grandchildren that are ... I'm sorry.  I have two (2) grandchildren who are 10 and she just made 11 and one is going to be 13; and I don't know if I could handle listening to the testimony.
> >
> > By the Court:  You have two (2) grandchildren you said?

---

[39] State Rec., Vol. 5 of 5, appellant's brief.
[40] State Rec., Vol. 3 of 5, transcript of July 25, 2011, p. 115.

By Ms. Voisin:  Yes, sir.  One just made 11 and one is going to be 13; and I took care of them since they – well, I take care of them for their mom while she is working.  And I think that would be kind of hard to listen to.

By:  Thank you for your honesty, Ms. Voisin.

Later, defense counsel made the following remarks to the prospective jurors:

Okay.  Now, I promise you I am going to close this up.  And I am now about to ask you the very, very last question.  And this is the very last time we can speak to each other.  Now, if I see you outside for the remainder of this trial, I have to walk past you, like I never seen you at all, to avoid any look of impropriety between us.  This is the very last time – like Mr. Rhodes said – the but, but, but, but, but – this is the very last time.  If you have anything that you have inside that maybe you feel like maybe I shouldn't be on this jury because I couldn't be fair because – if you have that lingering in your head, even if you are not sure if it is important, now would be the time to say it.  So, is there anything that any of you feel that we need to know in making a determination as to whether or not you should remain on this jury?

*    *    *    *    *

By Ms. Mustin:  Ms. Voisin, again what you told us?

By Ms. Voisin:  (Nodded head affirmatively).

At the bench conference, defense counsel, in challenging Voisin for cause, argued:  "Voisin stated that she doesn't think she could sit in this case.  She was near tears when she said she just doesn't think she could hear a matter like this, because of her bias towards-with her grandchildren.  She would put her grandkids into our victims' shoes."  The trial court denied the challenge.[41]

The Court of Appeal upheld the trial court's ruling, noting:  "A trial court is accorded great

discretion in determining whether to seat or reject a juror for cause, and such rulings will not be

---

[41] State v. Lovell, No. 2012 KA 1009, 2013 WL 595775, at *2-3 (La. App. 1st Cir. Feb. 15, 2013); State Rec., Vol. 1 of 5.

disturbed unless a review of the voir dire as a whole indicates an abuse of that discretion."[42]  The

Court of Appeal further observed:

> A prospective juror's seemingly prejudicial response is not grounds for an automatic challenge for cause, and a trial judge's refusal to excuse him on the grounds of impartiality is not an abuse of discretion, if after further questioning the potential juror demonstrates a willingness and ability to decide the case impartially according to the law and evidence.
> The line-drawing in many cases is difficult.  Accordingly, the trial judge must determine the challenge on the basis of the entire voir dire, and on the judge's personal observations of the potential jurors during the questioning.  Moreover, the reviewing court should accord great deference to the trial judge's determination and should not attempt to reconstruct the voir dire by a microscopic dissection of the transcript in search of magic words or phrases that automatically signify the jurors' qualification or disqualification.[43]

The Court of Appeal then concluded that "the trial court was in the best position to determine

whether [Voisin] could discharge her duty as a juror" and therefore declined to find that the trial

judge had abused his discretion in denying the challenge for cause.[44]  The Louisiana Supreme

Court then likewise denied relief without assigning reasons.[45]

In light of the appellate courts' rejection of the claim as to Voisin, there is no reason to

believe that those courts would have reached a contrary conclusion as to Chauvin, Cotton, and/or

Luke, all of whom were arguably less objectionable than Voisin for the following reasons.

Petitioner opines that Chauvin should have been excused because he had been molested as

a child[46] and because he thought that a criminal defendant should take the stand to testify on his

own behalf.[47]  However, upon further questioning, Chauvin was rehabilitated as to both issues.

He stated that the fact that he had been molested would not "affect [his] ability to be fair and

---

[42] Id. at *1.
[43] Id. at *3 (citations omitted).
[44] Id. at *4.
[45] State v. Lovell, 122 So. 3d 1014 (La. 2013); State Rec., Vol. 1 of 5.
[46] State Rec., Vol. 3 of 5, transcript of July 25, 2011, p. 69.
[47] Id. at pp. 86-87.

impartial."[48]   He further stated that he would be able to accept the judge's instruction that petitioner's failure to testify could not be held against him.[49]

Petitioner also suggests that Cotton and Luke should likewise have been excused for expressing opinions that a defendant should take the stand to testify.  However, Cotton was similarly rehabilitated, stating that she would be able to follow the court's instructions on that issue,[50] and Luke required no rehabilitation, in that, contrary to petitioner's assertion, she did *not* voice such an opinion.[51]

Accordingly, in light of the fact that the denial of the challenge to more problematic Voisin was affirmed, petitioner obviously has not demonstrated a reasonable probability that, if appellate counsel had included Chauvin, Cotton, and/or Luke in his assignment of error, the appellate courts would have vacated or reversed the trial court judgment.  Therefore, his claim fails.  See Briseno, 274 F.3d at 210.

For all of these reasons, it is clear that petitioner has not demonstrated that the state court decision rejecting his ineffective assistance of counsel claims was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.  Accordingly, utilizing the AEDPA's doubly deferential standards of review applicable to such claims, this Court should likewise deny relief.

### G.  Denial of New Trial

Petitioner's final claim is that the trial court erred in denying the defense motion for a new trial without holding a hearing.  That claim, which was asserted and denied on the merits in the state post-conviction proceedings, is clearly meritless.  The mere denial of a motion for a new trial

---

[48] Id. at p. 69.
[49] Id. at pp. 112-13.
[50] Id.
[51] See id. at p. 89.

without a hearing is not, in and of itself, a federal constitutional violation.  See Dickerson v. Guste, 932 F.2d 1142, 1145 (5th Cir. 1991) ("Dickerson argues that the state court violated the Louisiana Code of Criminal Procedure and state jurisprudence interpreting the Code [in its denial of his motion for a new trial].  We will not review a state court's interpretation of its own law in a federal habeas corpus proceeding.  We do not sit as a 'super' state supreme court in such a proceeding to review errors under state law.  Dickerson has failed to show that the state court's denial of his motion for new trial constituted a violation of any constitutional right. This claim, therefore, provides no basis for habeas corpus relief." (footnote, citations, and quotation marks omitted)); see also Haygood v. Quarterman, 239 Fed. App'x 39, 42 (5th Cir. 2007) ("To the extent that Texas state statutes provide a right to a motion for new trial or a hearing on such a motion, we will not review a state court's interpretation of its own law in a federal habeas corpus proceeding. Furthermore, we have held that the denial of a motion for new trial does not necessarily constitute a violation of a federal constitutional right." (citations, quotation marks, and brackets omitted)); Johnson v. Cain, Civ. Action No. 16-927, 2017 WL 5176386, at *23 (E.D. La. Apr. 25, 2017) ("Simply put, a denial of a motion for new trial does not violate an independent, cognizable federal constitutional right."), adopted, 2017 WL 5157604 (E.D. La. Nov. 7, 2017); Colbert v. Cain, Civ. Action No. 14-2472, 2016 WL 4186551, at *11 (E.D. La. Apr. 12, 2016) ("[T]o the extent petitioner is also arguing that his post-trial motions were erroneously denied, a denial of such motions does not violate an independent, cognizable federal constitutional right."), adopted, 2016 WL 4161257 (E.D. La. Aug. 5, 2016); cf. Krodinger v. Kent, Civ. Action No. 16-2069, 2016 WL 7191684, at *14 (E.D. La. Sept. 30, 2016) ("To the extent [petitioner] claims that the state trial court improperly denied his motion for post-verdict judgment of acquittal, that claim does not warrant federal habeas corpus relief.  A state court's denial of that type of post-trial motion does

not violate a federal constitutional right."), adopted, 2016 WL 7187948 (E.D. La. Dec. 12, 2016).

Therefore, this claim should be denied.

## **RECOMMENDATION**

It is therefore **RECOMMENDED** that the federal application seeking habeas corpus relief filed by Harris Richard Lovell be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[52]

New Orleans, Louisiana, this second day of April, 2018.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**

---

[52] Douglass referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.